**[Cite as *State v. Armengau*, 2025-Ohio-354.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 22AP-722 |
| v. | | (C.P.C No. 13CR-2217) |
| | : | |
| Javier Armengau, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |
| | : | |

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant/ Cross-Appellee, | : | No. 23AP-570 |
| | | (C.P.C. No. 13CR-2217) |
| v. | : | |
| Javier Armengau, | : | (REGULAR CALENDAR) |
| Defendant-Appellee/ Cross-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on February 4, 2025

**On brief:** *Dave Yost*, Attorney General, and *Andrea K. Boyd*, for appellee/cross-appellant. **Argued:** *Andrea K. Boyd*.

**On brief:** [*Mitchell A. Williams*], Public Defender, and *Leon J. Sinoff*, for appellant/cross-appellee. **Argued:** *Leon J. Sinoff*.

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} In case No. 22AP-722, defendant-appellant/cross-appellee, Javier Armengau, appeals an amended judgment entry of the Franklin County Court of Common

Pleas filed on November 8, 2022. This amended judgment entry was issued pursuant to a remand from this court for resentencing on Count 15. In case No. 23AP-570, plaintiff-appellant/cross-appellee, the State of Ohio, appeals the trial court's September 15, 2023 "corrected" amended judgment entry, which was issued after the trial court granted Armengau's motion for clarification of the November 8, 2022 amended judgment entry on September 6, 2023, and after Armengau had appealed the November 8, 2022 amended judgment entry to this court.

## I. Facts and Procedural History

{¶ 2} The facts and procedural history of this case are outlined and detailed in *State v. Armengau*, 10th Dist. No. 14AP-679, 2017-Ohio-4452; *State v. Armengau,* 10th Dist. No. 16AP-355, 2017-Ohio-197; *State v. Armengau,* 10th Dist. No. 17AP-852, 2018-Ohio-4299; and *State v. Armengau*, 10th Dist. No. 18AP-300, 2020-Ohio-3552, and will not be repeated here except as relevant to the appeals before us.

{¶ 3} Following a jury trial in 2014, Armengau was convicted of one count of public indecency (Count 2), two counts of gross sexual imposition (Counts 3 and 8), one count of rape (Count 10), one count of kidnapping (Count 14), and four counts of sexual battery (Counts 15 through 18), all resulting from allegations by women whom he encountered in the course of his practice as a criminal defense attorney. *Armengau*, 2017-Ohio-4452, ¶ 3 (10th Dist.).

> In sentencing Armengau, the trial court merged Counts 10 and 15, reasoning that the sexual battery underlying Count 15 was not separate from the rape underlying Count 10. (Aug. 28, 2014 Jgmt. Entry at 2.) It then sentenced Armengau to 15 months on each of the gross sexual imposition counts, 9 years for rape, 4 years for kidnapping, and 30 months on each of the three remaining sexual battery counts (16 through 18). *Id.* at 3. All counts were to be served concurrently with the others except for the kidnapping (Count 14), which the trial court ordered Armengau to serve consecutively to the rape (Count 10). *Id.* As a result, the court sentenced Armengau to a total of 13 years in prison. *Id.*

*Armengau*, 2020-Ohio-3552, ¶ 3 (10th Dist.).

{¶ 4} As relevant here, in Armengau's direct appeal of his convictions and sentence, this court held that the trial court erred by failing to merge Counts 10 and 14 (rape and kidnapping) and by merging the wrong sexual battery count (Count 15) with the rape rather

than the correct sexual battery count (Count 17). *Armengau*, 2017-Ohio-4452, ¶ 122-130 (10th Dist.). We remanded Armengau's case to the trial court for resentencing on Counts 10, 14, 15, and 17.

{¶ 5} On remand, as instructed by this court, the trial court merged the kidnapping count (Count 14) with the rape count (Count 10), and it exchanged the sexual battery counts, merging Count 17, rather than Count 15, with Count 10. (Mar. 28, 2018 Am. Jgmt. Entry at 4-5.) The trial court recognized that all previously imposed sentences would "remain in full force and [e]ffect" but stated that it would like to impose a total sentence of 13 years, to be "consistent" with the original sentence. (*Id.* at 5; Mar. 27, 2018 Resentencing Tr. at 30, 33.) It therefore sentenced Armengau to 48 months on the sexual battery in Count 15 and ordered Armengau to serve that sentence consecutively to the 9 years imposed in Count 10. (Mar. 28, 2018 Am. Jgmt. Entry at 4-5; Mar. 27, 2018 Resentencing Tr. at 30-33.) Armengau again appealed to this court.

{¶ 6} In *Armengau*, 2020-Ohio-3552, ¶ 15, 20 (10th Dist.), the appeal from Armengau's resentencing, this court again remanded the case to the trial court for resentencing on Count 15, with the instruction that Armengau must be credited 30 months for the time already served for the sexual battery conduct underlying Count 15 toward the sentence reimposed for that conduct, and that the trial court should not use the sentencing package doctrine in lieu of the statutory sentencing provisions of R.C. Chapter 29.

{¶ 7} The trial court held a third sentencing hearing in this matter on October 19, 2022, and issued an amended judgment entry on November 8, 2022. The November 8, 2022 amended judgment entry sentences Armengau to a definite prison term of 36 months on Count 15, to run consecutively to the 9-year prison term previously imposed on Count 10. It further orders that Armengau be credited 30 months against the newly imposed 36-month sentence on Count 15, and notes that Armengau has 58 days of jail-time credit which are to be applied in addition to the 30 months of credit to the total stated 12-year prison term.

## II. CASE NO. 22AP-722

{¶ 8} On December 5, 2022, Armengau appealed the November 8, 2022 amended judgment entry in case No. 22AP-722, and assigned the following errors:

> (1) Appellant's Conviction on Count 15 Violates His Fifth Amendment Right to Due Process, Because it Fails to Protect

Appellant from Double Jeopardy via Multiple Punishments for the Same Conduct, as Appellant Had Already Been Convicted (and Satisfied His Prison Term) on Count 18 for Conduct Indistinguishable From Count 15.

(2) Appellant was Denied his Fifth Amendment Right to Due Process When the Trial Court Erred and Failed to Correctly Follow this Court's Mandate to Award Appellant Full Credit for All Time Served for the Conduct Underlying Count 15, When More Than Forty-Five Months of Prison Time Credit Had Been Accrued, But Only Thirty Months of Prison Time Credit Was Awarded.

(Appellant Armengau's Brief at v-vi.)

{¶ 9} Armengau's first assignment of error is effectively a challenge to the validity of his conviction on Count 15, and it is barred by res judicata. Armengau argues that Count 15 and 18 were not distinguishable from each other and that convictions on both therefore expose him to double jeopardy. However, these issues have already been reviewed and decided by this court. As this court has previously stated, "those findings now bind this court." *Armengau*, 2020-Ohio-3552, ¶ 25 (10th Dist.), citing *Armengau*, 2019-Ohio-1010, ¶ 18 (10th Dist.), in passim (holding that all of these issues have been previously litigated to resolution).

{¶ 10} This court previously found that Armengau's attempts to relitigate the merits of his convictions are barred by res judicata. In case No. 18AP-300, this court found that any issues Armengau challenges to his convictions were resolved in his original direct appeal and that any issues he raised or could have raised with respect to his convictions were thereafter barred from reconsideration. *Armengau*, 2020-Ohio-3552, ¶ 25 (10th Dist.). We find specifically that to the extent Armengau now challenges the specificity of the evidence of allegations to distinguish between Count 15 and Count 18, he previously raised that issue in case Nos. 2017-Ohio-4452 and 2020-Ohio-3552, as well as in numerous postconviction motions and arguments in the trial court.[1] Accordingly, we overrule Armengau's first assignment of error in case No. 22AP-722 as being barred by res judicata.

---

[1] Armengau also made this argument unsuccessfully in case No. 18AP-276, his appeal from the trial court's decision denying his motion to dismiss pursuant to Crim.R. 29, which Armengau filed on remand after his first direct appeal. In case No. 18AP-276 this court held that the argument was barred by res judicata. *Armengau*, 2019-Ohio-1010, ¶ 8 (10th Dist.).

{¶ 11} In Armengau's second assignment of error, he argues that the trial court erred when it credited him only 30 months toward his 36-month sentence on Count 15, because he believes he served more than 45 months in prison for the conduct underlying Count 15. We do not find Armengau's argument persuasive, and we therefore overrule his second assignment of error.

{¶ 12} Armengau's original sentence for the conduct underlying Count 15 (but mistakenly attributed to Count 17) was 30 months in prison, concurrent to his other sentences. When the trial court resentenced Armengau on March 28, 2018, it imposed a sentence of 48 months on Count 15 to run consecutively to a 9-year sentence on Count 10. Armengau appealed the March 28, 2018 amended judgment entry on April 25, 2018.

{¶ 13} This court partially reversed the March 28, 2018 amended judgment entry, finding that "because Armengau already served the 30-month sentence imposed for the sexual battery incident underlying Count 15, the trial court erred in resentencing when it denied credit for time already served in connection with that conduct." *Armengau*, 2020-Ohio-3552, ¶ 1 (10th Dist.).

{¶ 14} Armengau now claims that, in resentencing him on November 8, 2022, the trial court misread this court's decision in case No. 18AP-300, he maintains he was entitled to more than 45 months—all the time he served under all his sentences—as credit against his 36-month sentence on Count 15, and that Count 15 should have been deemed completed for "time served." We disagree. Although Armengau was in prison for 45 months, he only served 30 months for the conduct that underlies Count 15—because that was the extent of the sentence for the conduct alleged in Count 15, but that the trial court mistakenly attributed to Count 17. As this court explained:

> The trial court erred . . . when it switched the count numbers (15 and 17) and merged Count 15 (which had nothing to do with Count 10) rather than merging Count 17 (which arose from the same conduct as Count 10). [*Armengau*, 2017-Ohio-4452, at ¶ 129]. In other words, while Armengau was not technically sentenced on Count 15 (since it had improperly merged with Count 10), he was sentenced for the conduct underlying Count 15 when he was sentenced for what the 2014 sentencing court mistakenly referred to as Count 17.

*Id.* at ¶ 13.

{¶ 15} We recognize that Armengau served time beyond the 30 months to which he was sentenced on Count 17, which was actually Count 15. However, he was also incarcerated pursuant to a 9-year sentence for rape. We are unpersuaded that more than 30 months could be attributed to time served for Count 15 when the trial court only sentenced him to serve 30 months for Count 17. Further, this interpretation is consistent with this court's instruction that, "[o]n resentencing, the 30 months [Armengau served under Count 17] should have been credited against whatever sentence was reimposed for the count relating to the sexual battery in the white truck . . . .,"—Count 15. *Id.* at ¶ 15. For these reasons, we overrule Armengau's second assignment of error in case No. 22AP-722.

## III.  CASE NO. 23AP-570

{¶ 16} On April 17, 2023, while the appeal in case No. 22AP-722 was pending in this court, the trial court held a miscellaneous hearing after Armengau raised concerns that the Ohio Department of Rehabilitation and Correction ("ODRC") had improperly calculated his release date pursuant to the November 8, 2022, amended judgment entry. Prior to this miscellaneous hearing, ODRC entered a notice of calculation of sentence on January 26, 2023, which stated that Armengau would be released on June 27, 2026, which was approximately 12 years from when Armengau began his incarceration, minus 58 days of jail-time credit. Armengau argued that ODRC's calculated release date failed to apply the 30 months of credit that was ordered by the November 8, 2022 amended judgment entry and claimed that his release date should have been December 27, 2023.

{¶ 17} On June 15, 2023, Armengau filed a motion for clarification of the November 8, 2022 amended judgment entry, which the trial court granted on September 6, 2023. In its decision, the trial court noted that at the hearing on Armengau's motion for clarification, "it appeared that the parties and the Court agreed that, pursuant to the Third Sentencing Entry of November 8, 2022, [Armengau's] release date should be December 27, 2023, as opposed to June 27, 2006," and the only remaining question was the procedural mechanism by which ODRC's erroneous calculation of Armengau's release date would be corrected. (Sept. 6, 2023 Decision & Entry at 10.) It stated, "the November 8, 2022 amended judgment entry is quite clear. [Armengau] has already served 30 months of the 36-month term imposed for Count 15, and [Armengau] is entitled to a 30-month credit toward that 36-month term." *Id.* at 13. The court found that Armengau "will have served

all the time to which he has been sentenced in this case . . . on December 27, 2023. The ODRC has erroneously calculated [Armengau's] release date as June 27, 2026. This is a problem that needs to be resolved." *Id.* at 12.

{¶ 18} In an effort to resolve what the trial court believed to be ODRC's erroneously calculated release date of June 27, 2026, the trial court issued a corrected amended judgment entry on September 15, 2023. This entry included the following instruction:

> The Court finds Defendant was admitted to the [ODRC] on September 2, 2014. Given credit for all prior prison time served since that that (sic) admission date and all other jail time credit served, this case will be complete on December 27, 2023. [On] that date, Defendant shall be released from prison and shall begin the mandatory five-year period of post release control described above.

(Emphasis omitted.) (Sept. 15, 2023 Am. Jgmt. Entry at 7.) Otherwise, the September 15, 2023 amended judgment entry was substantively identical to the November 8, 2022 amended judgment entry.

{¶ 19} Following this entry, on October 16, 2023, the state moved, pursuant to App.R. 5(C), for leave to file an appeal challenging the September 15, 2023 amended judgment entry. In its appeal—case No. 23AP-570—the state assigned two errors:

> 1. The trial court did not have jurisdiction to make a substantive change to its November 8, 2022 Amended Judgment Entry; the entry did not contain a clerical error, and the notice of appeal divested the trial court of jurisdiction to change the defendant's sentence.
>
> 2. To comply with the remand the trial court needed only to state that Armengau was to receive 30 months of credit toward Count 15; the trial court was not ordered to, nor was it able to, provide Armengau with 30 months of credit in addition to the 30 months that ODRC was already counting, or to order anything associated with Count 10.

{¶ 20} Armengau filed a cross-appeal in case No. 23AP-570, restating his first assignment of error from case No. 22AP-722. Having overruled that assignment of error in case No. 22AP-722, we decline to further address Armengau's cross-assignment of error in case No. 23AP-570.

{¶ 21} In its first assignment of error, the state argues that the trial court lacked jurisdiction to enter the September 15, 2023 amended judgment entry because Armengau's

notice of appeal in case No. 22AP-722 divested the trial court of jurisdiction to change Armengau's sentence. We agree that after Armengau appealed the November 8, 2022 amended judgment entry, the trial court lacked jurisdiction to change Armengau's sentence, but Armengau maintains that the trial court retained jurisdiction to clarify its sentencing entry to reflect the sentence the trial court actually imposed. Crim.R. 36 permits a trial court to correct "[c]lerical mistakes in judgments" and "errors in the record arising from oversight or omission" at any time. A clerical mistake refers to " ' "a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment." ' " *State v. Miller*, 2010-Ohio-5705, ¶ 15, quoting *State ex rel. Cruzado v. Zaleski*, 2006-Ohio-5795, ¶ 19, quoting *State v. Brown*, 136 Ohio App.3d 816, 819-820, 2000-Ohio-1660 (3d Dist. 2000). We have held that a trial court may issue an amended or corrected judgment entry nunc pro tunc after a notice of appeal has been filed so long as the amended entry does not change the substance of the judgment. *See, e.g.*, *State v. Anderson*, 2011-Ohio-6667, ¶ 19. "A nunc pro tunc entry reflects what a court 'actually decided, not what the court might or should have decided or what the court intended to decide.' " *State v. Ware*, 2014-Ohio-5201, ¶ 15, quoting *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164 (1995). *Compare State v. Miller*, 2010-Ohio-5705, at ¶ 15 (use of nunc pro tunc entry to impose restitution upon defendant was improper because it did not reflect what actually occurred at the sentencing hearing); *State v. White*, 2021-Ohio-1644 (1st Dist.) (nunc pro tunc entry changing sentences for rape from life imprisonments, as announced at sentencing hearing and journalized in a sentencing entry, to sentences of 15 years to life in prison was improper).

{¶ 22} The trial court stated in its decision granting Armengau's motion for clarification that the September 15, 2023 amended judgment entry would not alter the substance of the sentence imposed in the November 8, 2022 amended judgment entry, but "would reflect what the Court actually decided." (Sept. 6, 2023 Decision & Entry at 14.) But to determine whether the September 15, 2023 amended judgment entry was a proper nunc pro tunc entry that did not change the substance of the November 8, 2022 amended judgment entry, we must first determine the meaning of the November 8, 2022 amended judgment—particularly the meaning of the trial court's language regarding Armengau's 30 months of credit on Count 15 for prior time served.

{¶ 23} The November 8, 2022 amended judgment entry states, "Pursuant to the Tenth District's mandate, the Court finds that [Armengau] has already served Thirty (30) months in prison for the conduct underlying Count 15 (Sexual Battery). Accordingly, those **Thirty (30) months are to be credited to the Thirty-six (36) months imposed for Count 15 (Sexual Battery)** in this amended judgment entry." (Emphasis in original.) (Nov. 8, 2022 Am. Jgmt. Entry at 6.)

{¶ 24} As we explained above, the trial court believed ODRC misconstrued the November 8, 2022 amended judgment entry and, in calculating Armengau's release date as June 17, 2026, erroneously failed to give Armengau the ordered 30 months of credit toward his 36-month sentence on Count 15 for the time he served for conduct underlying that count. Reading the November 8, 2022 amended judgment entry in context of the history of this case and this court's decision in case No. 23AP-800, it is clear both that the trial court was correct in its belief that ODRC misconstrued the November 8, 2022 amended judgment entry and that the September 15, 2023 amended judgment entry was a proper nunc pro tunc order that did not change Armengau's sentence.

{¶ 25} In the first judgment entry, docketed August 28, 2014, the trial court ordered Armengau's sentence on Count 17 for sexual battery to run concurrently with his consecutive sentences on Counts 10 and 14, for rape and kidnapping respectively. The trial court erroneously merged Count 15 for sexual battery with Count 10, when—as the state conceded and this court found in case No. 14AP-679—it was Count 17 that should have merged with Count 10. *Armengau*, 2017-Ohio-4452, ¶ 129 (10th Dist.). When Armengau was resentenced on March 28, 2018, the trial court merged Counts 14 and 17 with Count 10, in accordance with this court's decision in case No. 14AP-679. It is important to note that Armengau had already served well over 30 months of his sentence prior to his resentencing on March 28, 2018, when the trial court merged Counts 14 and 17 with Count 10. Considering that Count 14 was effectively voided at resentencing by its merger into Count 10, the time Armengau served on his originally imposed sentences was served under the 9-year sentence under Count 10, as well as under the concurrent sentences under Counts 3, 8, 16, 17, and 18.

{¶ 26} By the time Armengau was resentenced, he had completed his sentences on Counts 3, 8, 16, 17, and 18. He therefore argued that the trial court should have been

forbidden from sentencing him on Count 15 since he had completely served all his time on Count 17 (which was actually imposed for the conduct underlying Count 15). However, in case No. 14AP-679, we remanded the matter to the trial court for resentencing on several counts, including Count 15, and in case No. 18AP-300, we held that Armengau remained subject to sentencing on Count 15 because the trial court maintains the authority to resentence a defendant until a direct appeal is concluded or until the time to file a direct appeal has expired. *Armengau*, 2017-Ohio-4452, ¶ 136 (10th Dist.); *Armengau*, 2020-Ohio-3552, ¶ 17 (10th Dist.). Accordingly, Armengau was properly sentenced on Count 15 for the first time on March 28, 2018, to serve 48 months in prison, consecutively to his 9-year sentence on Count 10.

{¶ 27} Also in case No. 18AP-300, we addressed the double-jeopardy implications that may arise as a result of resentencing Armengau for the conduct alleged under Count 15, but for which he had served time under Count 17. We stated:

> The Constitution permitted Armengau to be punished once for the conduct that underlay Count 15 (but which the trial court originally mistakenly referred to as Count 17). . . . And he was. He was sentenced to 30 concurrent months, which he more than served in full. On resentencing [on March 28, 2018], the 30 months should have been credited against whatever sentence was reimposed for the count relating to the sexual battery in the white truck (by whatever number it is called).

*Id.* at ¶ 15. In other words, to avoid a double-jeopardy violation, any sentence imposed for Count 15 must be reduced by 30 months to account for the time Armengau already served for the conduct underlying Count 15. Simply put, Armengau had earned 30 months of credit while serving the 30-month sentence erroneously imposed on Count 17, for the conduct alleged in Count 15. While he was serving those 30 months, Armengau was also concurrently serving his sentence on Count 10. He served those 30 months on both Count 17 and Count 10, albeit simultaneously. This court therefore remanded the matter to the trial court again for resentencing on Count 15, with instructions that Armengau receive credit "for time already served in connection with the conduct underlying Count 15." *Id.* at ¶ 27.

{¶ 28} Our holding and mandate to the trial court in case No. 18AP-300 was consistent with the Supreme Court of Ohio's holding in *State v. Christian*, 2020-Ohio-828, which we cited therein. In that case, the trial court had originally ordered Christian to serve

sentences for Counts 2, 3, and 5 concurrently, but on remand following Christian's direct appeal, the trial court resentenced Christian and ordered the sentence on Count 2 to run consecutively to the sentence on Count 5. *Id.* at ¶ 24. Christian's appeal from her resentencing reached the Supreme Court of Ohio, which held that the trial court retained authority to resentence Christian on Counts 2 and 5 after her original sentences related to those counts had been vacated on direct appeal. Instructional here, however, is the Supreme Court's guidance concerning application of the constitutional protections against double jeopardy. The Supreme Court stated, " 'the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully "credited" in imposing sentence upon a new conviction for the same offense.' " *Id.* at ¶ 24, quoting *North Carolina v. Pearce*, 395 U.S. 711, 718 (1969). To avoid a violation of Christian's protections against double jeopardy, the Supreme Court held, "because Christian served prison time simultaneously on Count Two and Count Five before her original sentence was vacated, she is entitled to have that time credited toward *both of her new sentences* on those counts." (Emphasis added.) *Id.* at ¶ 29.

{¶ 29} During the October 19, 2022 sentencing hearing that preceded the November 8, 2022 amended judgment entry, the trial court explained that this court's "mandate was to give credit for the 30 months already served for the underlying conduct." (Oct. 19, 2022 Tr. at 95.) The court explained that Armengau had "served 30 months thus far" for the conduct underlying Count 15, "because that's all you were sentenced to in Count 17 for the underlying conduct." *Id.* at 93. With respect to application of those 30 months, the court stated, "I will provide a very specific entry that [Armengau] is also to receive credit with respect to Count 15 for 30 months -- he has already served 30 months with ODRC for Count 15, and I will tie it back to the [Tenth District's] opinion." *Id.* at 106. In the November 8, 2022 amended judgment entry, the trial court did exactly what this court ordered it to do. It ordered that Armengau was entitled to credit for 30 months against his 36-month sentence on Count 15, for the time he had already served for the conduct underlying that count.

{¶ 30} The September 15, 2023 amended judgment entry did not change Armengau's sentence. Like the November 8, 2022 amended judgment entry, it stated, "[Armengau] is to receive Thirty (30) Months credit toward the Thirty-Six (36) months for

Count 15 (Sexual Battery), which will be served consecutive to the Nine (9) years Defendant is currently serving for Count 10 (Rape)." (Sept. 15, 2023 Am. Jgmt. Entry at 6; Nov. 08, 2022 Am. Jgmt. Entry at 6.) The only addition to the September 5, 2023 amended judgment entry was the following:

> The Court finds Defendant was admitted to [ODRC] on September 2, 2104. Given credit for all prior prison time served since that that (sic) admission date and all other jail time credit served, this case will be complete on December 27, 2023. [On] that date, Defendant shall be released from prison and shall begin the mandatory fiver-year period of post release control described above.

(Emphasis omitted. ) (Sept. 15, 2023 Am. Jgmt. Entry at 7.) As the trial court stated in its decision granting Armengau's motion for clarification, the "amended judgment entry does not alter the substance of the sentence imposed at Sentencing Hearing #3 on October 19, 2022" and memorialized in the amended judgment entry filed November 8, 2022. (Sept. 6, 2023 Decision & Entry at 14.) Nor does the September 15, 2023 entry purport to state what the trial court intended but failed to do in the November 8, 2022 amended judgment entry; the later entry repeats Armengau's sentence on Count 15, including his entitlement to 30 months credit on that sentence, verbatim from the earlier entry. The September 15, 2023 amended judgment entry did not change the substance of the sentence imposed in the November 8, 2022 amended judgment entry, nor was it inconsistent with this court's appellate jurisdiction in case No. 22AP-722. We therefore disagree with the state's argument that the trial court lacked jurisdiction to issue that order nunc pro tunc.

{¶ 31} The dissent takes issue with the trial court not having elaborated on its understanding of how the 30-month credit should be applied when calculating Armengau's release date, until it ruled on Armengau's motion for clarification. (Dissent at ¶ 43.) However, the trial court had no reason to anticipate that ODRC would miscalculate Armengau's release date. We disagree with the dissent's finding that because the transcript does not reflect the trial court calculating Armengau's release date, the trial court's determination that ODRC miscalculated his release date is more than a clerical change reflecting what actually happened. It is not common practice for the trial court to calculate a release date at a sentencing hearing. Nevertheless, in the October 19, 2022 sentencing hearing and the November 8, 2022 amended judgment entry, the trial court expressly tied

application of the 30-month credit to this court's decision in 18AP-300, which instructed the 30 months be credited to any sentence imposed on Count 15. As applied to the specific facts and circumstances of this case, when the trial court became aware that ODRC had miscalculated a release date that did not comply with the trial court's sentencing order and this court's instruction, the correction of the actual release is not a substantive change of the sentencing order.

{¶ 32} Having determined that the trial court had authority to issue the September 15, 2023 amended judgment entry nunc pro tunc, however, we must also conclude that the September 15, 2023 amended judgment entry is not a final appealable order and that we therefore lack jurisdiction to address the state's challenge to the merits of that entry. A trial court's correction of a sentencing entry through a nunc pro tunc entry does not create a new final, appealable order. *State v. Bonnell*, 2014-Ohio-3177, ¶ 31, citing *State v. Lester*, 2011-Ohio-5204, ¶ 20. "[A] nunc pro tunc entry by its very nature applies retrospectively to the judgment it corrects." *Lester* at ¶ 19. Therefore, a properly issued nunc pro tunc entry does not extend the time in which to file an appeal from the underlying original judgment. *State ex rel. Womack v. Marsh*, 2011-Ohio-229, ¶ 15, citing *State v. Yeaples*, 2009-Ohio-184, ¶ 15 (3d. Dist.). As the September 15, 2023 amended judgment entry here did not substantively alter the November 8, 2022 amended judgment entry, which was a final, appealable order, it was not a new final order from which a new appeal may be taken. We therefore dismiss case No. 23-570 for lack of a final, appealable order.

## IV. CONCLUSION

{¶ 33} Having overruled Armengau's assignments of error in case No. 22AP-722 and dismissed case No. 23AP-570 for lack of a final, appealable order, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER, J., concurs in part and dissents in part.
EDELSTEIN, J., concurs.


LUPER SCHUSTER, J., concurring in part and dissenting in part.

{¶ 34} This matter involves two coordinated appeals. Case No. 22AP-722 is Armengau's appeal from the trial court's November 8, 2022 amended judgment entry

issued following this court's remand for resentencing on Count 15 in *State v. Armengau*, 2020-Ohio-3552 (10th Dist.). In that appeal, I agree with the majority that res judicata bars the arguments Armengau raises in his first assignment of error and that the trial court did not err in crediting Armengau 30 months toward his 36-month sentence on Count 15 as Armengau raises in his second assignment of error. Case No. 23AP-570 is the state's appeal and Armengau's cross-appeal from the trial court's September 15, 2023 amended judgment entry that adds language to the resentencing entry related to Armengau's release date. In that appeal, while I agree with the majority that we need not address Armengau's cross-assignment of error, I do not agree with the majority's resolution of the state's assignments of error. Therefore, I respectfully concur in part and dissent in part.

{¶ 35} In its first assignment of error in case No. 23AP-570, the state argues the trial court lacked jurisdiction to issue its September 15, 2023 amended judgment entry. The trial court issued the September 15, 2023 amended judgment entry after a series of hearings and communications with the parties, all of which occurred after the trial court had issued its November 8, 2022 amended judgment entry. More specifically, while his appeal was pending in case No. 22AP-722, Armengau notified the trial court that he disagreed with ODRC's calculation of his release date, arguing ODRC was not accounting for the 30-month credit related to Count 15. The trial court held a miscellaneous hearing on April 17, 2023 and, as recounted by the trial court in its September 6, 2023 decision and entry, decided it would consult with ODRC about the release date calculation. When the state indicated it would not agree to the trial court's suggestion of a new sentencing entry, the trial court initially determined it would "take no further action" on Armengau's request to convey a different release date to ODRC. (Sept. 6, 2023 Decision & Entry at 10.)

{¶ 36} Following the April 2023 miscellaneous hearing, Armengau filed a June 15, 2023 motion for clarification of the November 8, 2022 amended judgment entry. In his motion for clarification, Armengau noted he disagreed with ODRC's calculation of his release date pursuant to the November 8, 2022 amended judgment entry and asked the trial court to clarify that it intended his release date to be December 27, 2023 rather than ODRC's determination of a June 27, 2026 release date. Armengau argued ODRC was failing to account for the 30 months of credit ordered on Count 15. The trial court granted Armengau's motion for clarification in a September 6, 2023 decision and entry, agreeing

with Armengau that ODRC's calculation of his release date did not give proper effect to the 30 months of credit he was to receive, stating "one cannot be said to have received 30 months of credit on a 36-month sentence if one is expected to serve 36 months after that credit was purportedly counted." (Sept. 6, 2023 Decision & Entry at 12.)

{¶ 37} Over the state's objection, the trial court then issued a September 15, 2023 amended judgment entry. The September 15, 2023 amended judgment entry is nearly identical to the November 8, 2022 amended judgment entry until the final, newly added paragraph which states:

> The Court finds Defendant was admitted to the Ohio Department of Rehabilitation and Correction on September 2, 2014. Given credit for all prior prison time served since that that (sic) admission date and all other jail time credit served, this case will be complete on December 27, 2023. [On] that date, Defendant shall be released from prison and shall begin the mandatory five-year period of post release control described above.

(Emphasis omitted.) (Sept. 15, 2023 Am. Jgmt. Entry at 7.)

{¶ 38} On appeal, the state argues the trial court lacked jurisdiction to issue the September 15, 2023 amended judgment entry issued in response to Armengau's motion for clarification. I agree with the state. There is no authority in the Ohio Revised Code or Ohio Rules of Criminal Procedure for a trial court to revisit and clarify a prior valid, final judgment. *See, e.g., State v. Carlisle*, 2011-Ohio-6553, ¶ 1 ("[a]bsent statutory authority, a trial court is generally not empowered to modify a criminal sentence by reconsidering its own final judgment"); *State v. Steele*, 2005-Ohio-4786, ¶ 9 (10th Dist.) ("[t]here is no provision in Ohio law for reconsideration of a valid, final judgment" in the trial court, and "[t]his is equally true in a criminal case"). Furthermore, the three cases that Armengau relies on in his motion for clarification as giving the trial court the authority to clarify its prior judgment do not apply to the circumstances here. *OAMCO v. Lindley*, 29 Ohio St.3d 1 (1987), is a civil case and involves a motion for clarification filed in the Supreme Court of Ohio, not in the trial court. Though *State v. Iacona*, 2000-Ohio-362, is a criminal case, the motions to clarify at issue in that case are, like the motion in *OAMCO*, motions filed in the Supreme Court, not in the trial court. Finally, in *State v. Small*, 2002-Ohio-3320 (10th Dist.), the "clarification" at issue was pursuant to a remand order from the appellate court. *Id.* at ¶ 4. The court of appeals found it could not discern the total aggregate sentence from

the trial court's sentencing entry and remanded to the trial court for clarification of the sentence. On remand, the trial court issued a judgment entry more clearly stating the sentence. *Id*. at ¶ 6-7. None of these three cases confer a trial court with authority to consider a post-judgment motion for clarification of a criminal sentence, and Armengau points to no other authority indicating the trial court could effectively reconsider its prior judgment through a so-called motion for clarification.

{¶ 39} Instead, as the state notes, a "trial court lacks the authority to reconsider its own valid, final judgment in a criminal case, with two exceptions: (1) when a void sentence has been imposed and (2) when the judgment contains a clerical error." *State v. Miller*, 2010-Ohio-5705, ¶ 14, citing Crim.R. 36. This case does not involve the imposition of a void sentence. However, the majority concludes the trial court's November 8, 2022 amended judgment entry contained a clerical error capable of correction by a nunc pro tunc entry. I do not agree with the majority's characterization of the trial court's September 15, 2023 amended judgment entry as a nunc pro tunc entry correcting a clerical error.

{¶ 40} "A clerical error or mistake refers to a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment." (Internal quotations omitted.) *Id*. at ¶ 15. While courts possess inherent authority to correct clerical errors in judgment entries to ensure the record " 'speaks the truth,' " a court's use of nunc pro tunc entries is limited to reflecting what the court actually decided, not what the court might have or should have decided. *State v. Kilgore*, 2012-Ohio-1316, ¶ 9 (10th Dist.), quoting *Miller* at ¶ 15. "[D]etermining whether a correction amounts to a clerical error, or something more, involves determining whether the change 'entails a substantive legal decision or judgment and is not merely a mechanical part of the judgment.' " *Id*. at ¶ 11, quoting *Miller* at ¶ 16.

{¶ 41} The majority finds the trial court's addition of the paragraph calculating Armengau's release date is not a substantive change because it merely reflects what the trial court already ordered. The majority reaches this conclusion in part because the trial court stated in its decision and entry granting Armengau's motion for clarification that this is the result it intended. However, the change to the judgment entry is not rendered non-substantive simply because the trial court interprets it as such. *See Miller* at ¶ 15 (the amended journal entry was an improper nunc pro tunc entry because while it "may reflect

what the trial court *should have decided* at sentencing," it did not "reflect what the trial court did decide but recorded improperly," and a nunc pro tunc entry is used to "reflect the events that actually occurred at the sentencing hearing") (emphasis in original).

{¶ 42} To determine whether the purported nunc pro tunc entry is clerical or substantive, we must examine the transcript of the third resentencing hearing. There is nothing in that transcript indicating the trial court either explained its interpretation of how the 30-month credit must apply or otherwise determined Armengau's ultimate release date. Instead, the trial court was clear at the third resentencing hearing that it was imposing a sentence of three years on Count 15 to run consecutive to the nine-year sentence on Count 10, for an aggregate sentence of 12 years, and that is the sentence the trial court included in the November 8, 2022 amended judgment entry. The trial court also discussed at the hearing wanting to ensure the Bureau of Sentence Computation understood Armengau would receive both jail-time credit and his 30-month credit. Notably, when the state specifically raised the concern that the 30-month credit not be counted twice because ODRC was already counting the 30 months in its computation, the trial court expressly decided it would have the entry refer back to the appellate decision rather than risk creating more confusion by adding more language. The transcript indicates the trial court directly faced the question of how the 30-month credit would be applied to Armengau's overall sentence and determined, on the record, that it would not address the issue beyond "provid[ing] a very specific entry that he is also to receive credit with respect to Count 15 for 30 months -- he has already served 30 months with ODRC for Count 15, and I will tie it back to the Court's opinion." (Oct. 19, 2022 Tr. at 106.)

{¶ 43} It was not until the trial court ruled on Armengau's motion for clarification that the trial court elaborated on its understanding of how it thought the 30-month credit should apply when calculating Armengau's release date. A proper nunc pro tunc entry, however, reflects what actually happened at the sentencing hearing. *State v. Elkins*, 2021-Ohio-1271, ¶ 12 (10th Dist.) ("a court's use of nunc pro tunc entries is limited to reflecting what the court actually decided, not what the court might have or should have decided"). Because the sentencing transcript is clear that the trial court did not calculate Armengau's release date during that hearing, the record does not support the majority's position that the September 15, 2023 amended judgment entry is a clerical change reflecting what

actually happened at the sentencing hearing. *Miller* at ¶ 15. Even accepting the majority's position that the trial court had no reason at the October 19, 2022 resentencing hearing to anticipate how ODRC would calculate the release date, the trial court could not determine it disagreed with both ODRC's and the state's calculation of the sentence without engaging in a substantive legal analysis and calculation in order to include a release date in the September 15, 2023 amended judgment entry. *Elkins* at ¶ 12 (a change to an entry is more than the correction of a clerical error when the change involves a substantive legal decision or judgment), quoting *Miller* at ¶ 16. I would find the addition of the new paragraph to the September 15, 2023 amended judgment entry is not a clerical change but a substantive one. As such, the September 15, 2023 amended judgment entry is not a proper nunc pro tunc entry and the trial court lacked jurisdiction to enter it.

{¶ 44} I would also note that while the trial court lacks jurisdiction to revisit its prior decisions to make substantive changes, a defendant who believes ODRC has not properly calculated his or her sentence is not foreclosed from relief. In appropriate circumstances, a defendant may be able to assert a challenge to the calculation of his or her release date through an extraordinary writ. *See, e.g.*, *State ex rel. Moody v. Dir.*, *Ohio Bur. of Sentence Computation*, 2024-Ohio-5231 (inmate sought a writ of mandamus compelling the director of the Ohio Bureau of Sentence Computation to correctly calculate his expected release date); *State ex rel. Rowe v. McCown*, 2006-Ohio-548, ¶ 4 ("[h]abeas corpus, rather than mandamus, is the proper action to seek release" from prison).

{¶ 45} Because I would find the September 15, 2023 amended judgment entry is neither a proper "clarification" nor a proper nunc pro tunc entry, I would find the trial court lacked jurisdiction to enter the September 15, 2023 amended judgment entry. Accordingly, I would sustain the state's first assignment of error in case No. 23AP-570, render moot the state's second assignment of error, and reverse the trial court's judgment in case No. 23AP-570.

{¶ 46} As indicated above, I agree with the majority's decision to overrule Armengau's two assignments of error and affirm the trial court's judgment in case No. 22AP-722. I further agree with the majority that we need not address Armengau's cross-assignment of error in his cross-appeal in case No. 23AP-570 as that assignment of error restates his first assignment of error from case No. 22AP-722. However, because I would

sustain the state's first assignment of error, moot the state's second assignment of error, and reverse the trial court's judgment in case No. 23AP-570, I respectfully concur in part and dissent in part.

———————————